## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

---

LAWRENCE GILLEN,                    )
                                   )
    Plaintiff,                 )
                                   )
v.                                 )    No. 17-cv-2529-JPM-tmp
                                   )
C/O DITTO and CPL. PIPKEN,         )
                                   )
    Defendants.                )

---

### REPORT AND RECOMMENDATION

---

Before the court is a motion for summary judgment filed by defendants C/O Ditto and Cpl. Pipken (collectively "defendants") on February 4, 2021.[1] (ECF No. 59.) On February 26, 2021, *pro se* plaintiff Lawrence Gillen filed a response.[2] (ECF No. 61.) Because Gillen's initial response did not address defendants' statement of facts or provide citations to the record, the court permitted Gillen to supplement his response. (ECF No. 62.) Gillen filed a supplemental response on March 22, 2021. (ECF No. 63.) For the

---

[1]On June 9, 2020, the presiding district judge entered an order referring all pre-trial motions to the undersigned for determination or report and recommendation, as appropriate. (ECF No. 37.)

[2]Although the docket entry reads "Notice of filing declaration and affidavit by Lawrence Gillen," the court construed the filing as a response to defendants' motion for summary judgment. (ECF No. 62, at 1 n.2.)

reasons below, the undersigned recommends that defendants' motion for summary judgment be granted.

## I.    PROPOSED FINDINGS OF FACT

On July 25, 2017, plaintiff Lawrence Gillen, an inmate at the West Tennessee State Penitentiary ("WTSP") in Henning, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983, asserting claims against C/O Ditto, Cpl. Pipken, and numerous other defendants. On April 10, 2018, the presiding district judge screened the complaint pursuant to 28 U.S.C. § 1915A(b) and 28 U.S.C. § 1915(e)(2)(B), and entered an order dismissing a majority of Gillen's claims and all defendants, other than Ditto and Pipken. (ECF No. 13.) The order permitted Gillen's § 1983 claims for excessive force to proceed as to Ditto and Pipken. (Id. at 11.) Ditto and Pipken now seek summary judgment on these claims. (ECF No. 59.)

As stated above, Gillen's initial response to the motion for summary judgment, which consisted of a declaration and over two hundred pages of exhibits, did not respond to defendants' statement of facts or provide citations to the record. (ECF No. 61.) Out of an abundance of caution,[3] the undersigned entered an order

---

[3]"District courts have no obligation to notify non-prisoner pro se parties of the requirements of Federal Rule of Civil Procedure 56 or to advise them of the consequences of failing to respond to a summary judgment motion." Walker v. Lauderdale Cty., No. 2:16-

describing the requirements of applicable Local Rules and Federal Rules of Civil Procedure and permitting Gillen to file a supplemental response. (ECF No. 62, at 1-2.)

As the court explained in its prior order, Local Rule 56.1 requires that a party opposing a motion for summary judgment "must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." LR 56.1(b). Furthermore, "[e]ach disputed fact must be supported by specific citation to the record." Id. Similarly, Rule 56 of the Federal Rules of Civil Procedure requires that a party support or challenge factual assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

cv2362-STA-egb, 2019 U.S. Dist. LEXIS 40298, 2019 WL 1179423, at *2 (W.D. Tenn. Mar. 13, 2019) (citing McKinnie v. Roadway Exp., Inc., 341 F.3d 554, 558 (6th Cir. 2003)). However, "the Sixth Circuit has sent mixed signals on whether prisoner pro se litigants are entitled to such guidance from the courts at summary judgment." Id. (citing United States v. Ninety-Three Firearms, 330 F.3d 414, 428 (6th Cir. 2003)).

Fed. R. Civ. P. 56(c)(1). When a party fails to properly challenge an opposing party's assertion of fact, Rule 56(e) permits the court to "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3). In addition, the court need not consider any unsupported factual assertions or materials in the record not cited by the parties. See Fed. R. Civ. P. 56(c)(3); see also Gunn v. Senior Servs. of N. Ky., 632 F. App'x 839, 847 (6th Cir. 2015) ("'[C]onclusory and unsupported allegations, rooted in speculation,' are insufficient to create a genuine dispute of material fact for trial.") (quoting Bell v. Ohio State Univ., 351 F.3d 240, 253 (6th Cir. 2003)).

Gillen's supplemental response does little to correct the deficiencies previously identified by the court - it does not include any citations to the record or respond to defendants' statement of facts as required by the Local Rules and Federal Rules of Civil Procedure. Instead, the supplemental response contains only sparse references to pieces of evidence without citing to them. Gillen also introduces paragraphs of unsupported factual allegations by asserting "evidence will show that . . . ," without pointing to any specific pieces of evidence. (ECF No. 63, at 1-

- 4 -

5.) Because Gillen's responses do not meet the requirements of
Local Rule 56.1 and Rule 56 of the Federal Rules of Civil
Procedure, the following facts are deemed undisputed for the
purpose of resolving the motion for summary judgment.[4]

On April 13, 2017, while Gillen was detained at WTSP, four
corrections officers - defendant Ditto, Sgt. Daniels, Officer
Goody, and Officer "CSI" - approached Gillen's cell to transfer
him to another cell block following a verbal conflict between
Gillen and Ditto. (Gillen Dep., ECF No. 60, at 27-28, 38.)
According to Gillen, he asked the officers for time to pack his
belongings, to which the officers responded that they would pack
Gillen's belongings for him. (Id. at 28.) Gillen told the officers
this was unacceptable and refused to cooperate with them. (Id. at
28, 64.) One of the officers unlocked the door to the cell while
using his foot to hold it shut. (Id. at 28, 63-64.) When Gillen
refused to put on handcuffs, the officers opened the door to enter
the cell. (Id. at 28.) When the door swung out, Gillen "came
busting out swinging." (Id. at 65.)

Gillen ran past Daniels and began throwing punches at Ditto.
(Id. at 29, 65.) Gillen struck Ditto in the face several times,

---

[4]The undersigned notes, however, that Gillen's initial and
supplemental responses do not raise or dispute any facts beyond
those identified in defendants' statement of facts, which is based
exclusively on Gillen's deposition testimony.

bloodying his nose. (Id. at 29, 63.) The other officers then rushed Gillen and backed him up to the wall. (Id.) The officers began hitting Gillen in efforts to subdue him. (Id.) Officer "CSI" attempted to spray Gillen with mace and then tackled him, after which Gillen picked up the can of mace and hit Officer "CSI" on the head with it. (Id.) Officer "CSI" then flipped Gillen onto his stomach. (Id.) Gillen asserts that he stopped struggling at that point and laid on the ground as the officers put handcuffs on him. (Id.) According to Gillen's deposition testimony, Ditto then approached Gillen and struck him in the face three times while he was in handcuffs. (Id. at 29, 39, 56, 61.) Gillen testified at his deposition that he did not suffer any injuries because the strikes were not hard. (Id. at 56, 61-62.)

Pipken was not among the officers who approached Gillen's cell, nor was he present during the cell extraction or ensuing altercation between Gillen and the other officers. (Id. at 39.) Pipken arrived on the scene only after Gillen was restrained in handcuffs and allegedly struck by Ditto. (Id.) Once Pipken arrived, Gillen was placed in shackles. (Id. at 29.) Pipken and Officer "CSI" then carried Gillen down the stairs. (Id. at 29-30, 46-50.) Pipken held Gillen's legs and Officer "CSI" held his upper body and head. (Id. at 29-30, 46-50.) Gillen asserts that Officer "CSI"

- 6 -

purposely dropped him on the stairs. (<u>Id.</u> at 29-30, 50.) Pipken did not drop Gillen. (<u>Id.</u> at 29-30, 50.)

Gillen then received a medical exam. (<u>Id.</u> at 30, 52-53.) Gillen had a "little bump" on the left side of his head from being dropped on the stairs.[5] (<u>Id.</u> at 53, 76.) Gillen was not bleeding and had no other visible bruises. (<u>Id.</u> at 53-54, 76.) Gillen sought no medical treatment in relation to being struck by Ditto. (<u>Id.</u>)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations;

---

[5]Gillen testified during his deposition that Ditto struck him on the right side of his face. (ECF No. 60, at 53.)

significant probative evidence must be presented to support the complaint." <u>Goins v. Clorox Co.</u>, 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. <u>Banks v. Wolfe Cty. Bd. of Educ.</u>, 330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. <u>See</u> <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible unsworn hearsay in deciding a motion for summary judgment. <u>Tranter v. Orick</u>, 460 F. App'x 513, 514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. <u>Bell</u>, 351 F.3d at 247 (quoting <u>Anderson</u>, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." <u>McKay v. Federspiel</u>, 823 F.3d 862, 866 (6th Cir. 2016).

**B.    Excessive Force Claims**

"The Eighth Amendment prohibits punishments that 'involve the unnecessary and wanton infliction of pain,' including inflictions of pain that 'are totally without penological justification.'" <u>Lockett v. Suardini</u>, 526 F.3d 866, 875 (6th Cir. 2008) (quoting

Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Where an inmate
challenges a prison guard's use of force, the "core judicial
inquiry" is not "whether a certain quantum of injury was
sustained," but rather "whether force was applied in a good-faith
effort to maintain or restore discipline, or maliciously and
sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37
(2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

While a "significant injury" is not a prerequisite for stating
a claim of excessive force, "[t]his is not to say that the 'absence
of serious injury' is irrelevant to the Eighth Amendment inquiry."
Wilkins, 559 U.S. at 37 (quoting Hudson, 503 U.S. at 7). "[T]he
extent of injury suffered by an inmate is one factor that may
suggest whether the use of force could plausibly have been thought
necessary in a particular situation." Id. (internal quotation
marks omitted). "The extent of injury may also provide some
indication of the amount of force applied." Id.

As the Supreme Court has explained, "not 'every malevolent
touch by a prison guard gives rise to a federal cause of action.'"
Id. (quoting Hudson, 503 U.S. at 9). "The Eighth Amendment's
prohibition of 'cruel and unusual' punishment necessarily excludes
from constitutional recognition de minimis uses of physical force,
provided that the use of force is not of a sort 'repugnant to the
conscience of mankind.'" Hudson, 503 U.S. at 9-10 (quoting Whitley

- 9 -

v. Albers, 475 U.S. 312, 327 (1986)). Thus, "[a]n inmate who
complains of a 'push or shove' that causes no discernible injury
almost certainly fails to state a valid excessive force claim."
Wilkins, 559 U.S. at 38 (citing Hudson, 503 U.S. at 9).

1.    Claim Against Defendant Pipken

      At the screening stage, the court permitted Gillen's claim
against Pipken to proceed only as to the allegation that Pipken
"dropp[ed] Gillen on the staircase in retaliation for Gillen's
altercations with other [officers]." (ECF No. 13, at 11.) However,
based on the undisputed facts above, it was Officer "CSI," not
Pipken, who dropped Gillen on the stairs. Gillen testified at his
deposition that Pipken did not drop him. (ECF No. 60, at 29-30,
50.) In his supplemental response, Gillen concedes that he "ha[s]
no argument or claim" as to Pipken. (ECF No. 63, at 1.) Based on
the above, it is recommended that the motion for summary judgment
be granted as to defendant Pipken.[6]

---

[6]Gillen asserts that video footage of Officer "CSI" dropping him
on the stairs was withheld during discovery. (ECF No. 61, at 4-
5.) Gillen points to an email from Warden Jonathan P. Lebo dated
April 15, 2017, which states that "[o]n video it shows officers
taking inmate Gillen down the stairs and [a corrections officer]
slip and drop inmate Gillen on the stairs." (ECF No. 61-1, at 133.)
Gillen states he received only the video footage of the altercation
that took place outside his cell. (ECF No. 61, at 4.) Prior to
Gillen's filings referencing the email from Warden Lebo, counsel
for defendants believed no other video footage existed. (ECF No.
60, at 59.) Although the court views all evidence in the light
most favorable to Gillen as the nonmoving party, see McKay, 823

2.    <u>Claim Against Defendant Ditto</u>

At the screening stage, the court permitted Gillen's claim against Ditto to proceed only as to the allegation that Ditto "allegedly punch[ed] him three times while Gillen was in handcuffs[.]" (ECF No. 13, at 11.) The court determined that the complaint failed to state a claim against Ditto and the other officers for their actions prior to Gillen being placed in handcuffs. (<u>Id.</u>) The court stated, "[i]t is clear these actions by [the officers] were in response to Gillen's actions, were done in good faith efforts to restore discipline, and fall within the scope of *de minimis* force[.]" (<u>Id.</u>) Accordingly, the court's analysis on this motion for summary judgment is limited to the three punches allegedly thrown by Ditto after Gillen was placed in handcuffs.

This case does not involve "a spontaneous assault by a prison guard." <u>See</u> <u>Coley v. Lucas Cty.</u>, 799 F.3d 530, 538 (6th Cir. 2015). Rather, the alleged incident occurred on the tail end of an altercation initiated by Gillen, one which left Ditto bleeding from his nose. Gillen asserts that he was no longer resisting once

---

F.3d at 866, Gillen does not assert that the video footage, if produced, would alter the facts of this case, or give rise to a genuine dispute of material fact. In other words, even if the video footage in question shows exactly what Gillen claims it does, it would not change the court's legal analysis because according to Gillen's own testimony (1) he was not dropped on the stairs by Pipken and (2) he was hit three times by Ditto and sustained no injuries.

placed in handcuffs, but "[e]ven where a suspect does not actively resist, an excessive-force claimant must show something more than *de minimis* force." Hernandez v. Simmons, No. 19-5344, 2020 U.S. App. LEXIS 29233, at *7-8 (6th Cir. Sept. 14, 2020) (citing Leary v. Livingston Cty., 528 F.3d 438, 443 (6th Cir. 2008)); see also Hanson v. Madison Cty. Det. Ctr., 736 F. App'x 521, 530 (6th Cir. 2018).

In Leary, the Sixth Circuit Court of Appeals faced a similar scenario and determined that "Leary's single allegation of force - that [a corrections officer] hit him '[i]n the back of the neck' with the side of his hand, performing 'a karate chop kind of deal' - was *de minimis*." 528 F.3d at 443. The court observed that Leary "did not suffer any objectively verifiable injury from the blow." Id. The court emphasized that "Leary himself testified at his deposition that the hit 'didn't hurt or nothing,' that he 'didn't have any injury' and that he never sought any medical treatment." Id. The court also pointed to Leary's testimony at his deposition that the corrections officer "didn't hit [him] that hard." Id. The court classified Leary as an "unusual case," stating "[i]t is not often that a constitutional tort claimant seeks relief for an alleged assault or battery but then says that the defendant's actions 'didn't hurt or nothing' and never says that he felt threatened by the officer's action." Id. at 444. The Leary court

- 12 -

concluded that "[w]hatever else non-actionable *de minimis* force
may be, it must include a touching that neither 'hurt' nor
threatened the individual." Id. at 445.

Gillen's testimony regarding the alleged force applied by
Ditto is substantially similar to the deposition testimony at issue
in Leary. Gillen testified at his deposition that the strikes were
not hard, that he sustained no injuries from them, and that he
never sought any related medical treatment. Gillen's deposition
testimony regarding the complete absence of any injury provides a
strong indicator that a minimal amount of force was applied. See
Wilkins, 559 U.S. at 37. Based on Gillen's deposition testimony,
no reasonable trier of fact could find that the alleged application
of force was more than *de minimis*.

Other courts have deemed applications of force similar to
that alleged by Gillen to be *de minimis*. See, e.g., Reeves v.
Cathers, No.: 6:17-cv-00146-GFVT-HAI, 2019 WL 3495796, at *4 (E.D.
Ky. July 15, 2019), report and recommendation adopted, 2019 WL
3468206 (E.D. Ky. July 31, 2019) ("[W]hat Reeves describes as a
'quick jab to the jaw' that evidently caused him only minor
discomfort and no lingering medical issues can properly be
considered as a *de minimis* use of force.") (citing Leary, 528 F.3d
at 443); see also Goudlock v. Blankenship, No. 1:13-cv-1215, 2016
WL 3668008, at *5-6 (N.D. Ohio July 11, 2016) (finding that a

plaintiff who alleged that corrections officers "punched and kneed [him] after he was handcuffed" and "struck his head against the bed frame," could not "show that defendants' use of force was more than *de minimis*" because he "produced no evidence of a discernable injury"); Daniels v. Mahone, No. 1:14 CV 2753, 2016 WL 1435926, at *4 (N.D. Ohio Apr. 12, 2016) (finding plaintiff's allegation that a corrections officer "with no warning, grabbed plaintiff and eventually slammed him to the ground" constituted a *de minimis* use of force); Jones v. Cosgrove, No. 1:10-CV-386, 2011 WL 1231170, at *10-11 (W.D. Mich. Mar. 7, 2011), report and recommendation adopted, 2011 WL 1234099 (W.D. Mich. Apr. 1, 2011) (finding plaintiff's allegation that a corrections officer "hit [him] in the face" constituted a *de minimis* use of force); Marbury v. Hicks, No. 1:09CV407, 2010 WL 4537922, at *5 (N.D. Ohio Nov. 3, 2010) (finding plaintiff's allegation that a corrections officer "struck him in the neck/head" constituted a *de minimis* use of force).

Although the court does not condone the conduct alleged, the undisputed facts in this case demonstrate that the force alleged was *de minimis*, and based on Gillen's deposition testimony, it does not rise to the level of being "repugnant to the conscience of mankind." See Hudson, 503 U.S. at 9-10.

## III. RECOMMENDATION

- 14 -

Based on the above, the undersigned recommends that the motion for summary judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
_____
TU M. PHAM
Chief United States Magistrate Judge

May 19, 2021
_____
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**