# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| LAWRENCE GILLEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 2:17-cr-02529-JPM-tmp |
| v. ) | |
| ) | |
| C/O DITTO and CPL. PIPKEN, ) | |
| ) | |
| Defendants. ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the Report and Recommendation of the Magistrate Judge entered on May 19, 2021. (ECF No. 65.) The Magistrate Judge recommends that the Court grant Defendants C/O Ditto and Cpl. Pipken's Motion for Summary Judgment. (Id.; see also ECF No. 59.) Plaintiff Lawrence Gillen filed a timely objection to the Magistrate Judge's Report on June 11, 2021.[1] (ECF No. 68.) Gillen does not object to the Magistrate Judge's recommendation as to Defendant Pipken. (Id.) But Gillen objects to the Magistrate Judge's recommendation as to Defendant Ditto, arguing specifically that even *de minimis* uses of force are unconstitutional if the use of force is against a handcuffed individual. (Id.)

Upon de novo review, the Court **ADOPTS** the Report and Recommendation of the Magistrate Judge as to Defendant Ditto and finds that his use of force was *de minimis* and therefore does not give rise to a constitutional violation. Upon clear error review, the Court

---

[1] Although Plaintiff's Objection was not received and docketed until July 12, 2021, it is dated June 11, 2021. (ECF No. 68 at PageID 602.)

also **ADOPTS** the Report and Recommendation as to Defendant Pipken. Accordingly, the Defendants' Motion for Summary Judgment is **GRANTED**.

I.   **FACTUAL BACKGROUND**

The Magistrate Judge summarized the undisputed[2] facts as follows:

On April 13, 2017, while Gillen was detained at [the West Tennessee State Penitentiary ("WTSP")], four corrections officers – defendant Ditto, Sgt. Daniels, Officer Goody, and Officer "CSI" – approached Gillen's cell to transfer him to another cell block following a verbal conflict between Gillen and Ditto. According to Gillen, he asked the officers for time to pack his belongings, to which the officers responded that they would pack Gillen's belongings for him. Gillen told the officers that this was unacceptable and refused to cooperate with them. One of the officers unlocked the door to the cell while using his foot to hold it shut. When Gillen refused to put on handcuffs, the officers opened the door to enter the cell. When the door swung out, Gillen "came busting out swinging."

Gillen ran past Daniels and began throwing punches at Ditto. Gillen struck Ditto in the face several times, bloodying his nose. The other officers then rushed Gillen and backed him up to the wall. The officers began hitting Gillen in efforts to subdue him. Officer "CSI" attempted to spray Gillen with mace and then tackled him, after which Gillen picked up the can of mace and hit Officer "CSI" on the head with it. Officer "CSI" then flipped Gillen onto his stomach. Gillen asserts that he stopped struggling at that point and laid on the ground as the officers put handcuffs on him. According to Gillen's deposition testimony, Ditto then approached Gillen and struck him in the face three times while he was in handcuffs. Gillen testified at his deposition that he did not suffer any injuries because the strikes were not hard.

Pipken was not among the officers who approached Gillen's cell, nor was he present during the cell extraction or ensuing altercation between Gillen and the other officers. Pipken arrived on the scene only after Gillen was restrained in handcuffs and allegedly struck by Ditto. Once Pipken arrived, Gillen was placed in shackles. Pipken and Officer "CSI" then carried Gillen down the stairs. Pipken held Gillen's legs and Officer "CSI" held his upper body and head. Gillen asserts that Officer "CSI" purposely dropped him on the stairs. Pipken did not drop Gillen.

Gillen then received a medical exam. Gillen had a "little bump" on the left side of his head from being dropped on the stairs. Gillen was not bleeding and

---

[2] The Magistrate Judge found these facts to be undisputed because Plaintiff did not properly challenge Defendants' assertion of these facts. (ECF No. 65 at PageID 584 – 85.) This Court agrees with the Magistrate Judge's finding.

had no other visible bruises.  Gillen sought no medical treatment in relation to being struck by Ditto.

(ECF No. 65 at PageID 586–88 (internal citations omitted).)

## II.     LEGAL STANDARD

### A. Standard of Review

"Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed. R. Civ. P. 72(b) advisory committee note.

When a timely objection has been filed, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  The portions of a magistrate judge's recommendation as to which no specific objections were filed are reviewed for clear error.  See Fed. R. Civ. P. 72(b) advisory committee notes; Howard v. Sec'y of Health and Human Servs., 932 F.2d 505, 509 (6th Cir. 1991) (noting that when a party makes a general objection, "[t]he district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless.").

### B. Excessive Force

Where an inmate challenges a use of force by prison guards, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) ("The 'core judicial inquiry' [for an excessive force claim]

was not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to restore discipline, or maliciously and sadistically to cause harm." (internal quotation marks omitted)).

A significant physical injury is not required to establish the objective component of an excessive force claim. Id. at 1178–79 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."); Hudson v. McMillian, 503 U.S. 1, 7–9 (1992) (same). However, the Supreme Court has made it clear that trivial physical contact does not violate the Eighth Amendment:

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. See Johnson v. Glick, 481 F.2d [1028], 1033 [(2d Cir. 1973)] ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chamber, violates a prisoner's constitutional rights."). The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.

Id. at 9–10 (internal quotation marks omitted); see also Wilkins, 559 U.S. at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

### III.   ANALYSIS

Plaintiff objects to the Magistrate Judge's finding that Ditto's use of force was *de minimis* and therefore does not rise to the level of a constitutional violation.[3] (ECF No. 68 at PageID 601; see also ECF No. 65 at PageID 595.) Specifically, Plaintiff argues that uses of

---

[3] Gillen also appears to object to the Magistrate Judge's finding that the allegedly withheld video footage would not alter the facts of the case. (ECF No. 68 ("[I o]bject to the report and recommendation on the grounds that… evidence[] was withheld by defendants' employer… and this evidence will show Defendant Ditto stricking [sic] plaintiff while plaintiff was cuffed up.").) This Court agrees with the Magistrate Judge. Even if video evidence was withheld, Gillen claims that the video evidence would show that Defendant Ditto struck him while Gillen was handcuffed, which is exactly what the undisputed facts already establish.

force must stop when a person no longer poses a threat; that a person who is handcuffed does not pose a threat; and that therefore Ditto's use of force, even if *de minimis*, is still a constitutional violation because Gillen was handcuffed at the time Ditto punched him.  (See generally ECF No. 68.)

Whether an inmate poses a threat to a prison guard is not the focal point of the Eighth Amendment excessive force test.  The Sixth Circuit has stated that "even where a [detained individual] does not actively resist, the use of force must cross the *constitutional* line." Hanson v. Madison Cnty. Det. Ctr., 736 F. App'x 521, 530 (6th Cir. 2018) (emphasis in original) (citing Leary v. Livingston Cnty., 528 F.3d 438, 443 (6th Cir. 2008)).  Instead, the threat an inmate poses is just one factor to consider in the subjective component of the test for an Eighth Amendment violation.  See Cordell v. McKinney, 759 F.3d 573, 581 (6th Cir. 2014) ("In determining whether a prison official had a culpable state of mind, we have found it helpful to consider 'such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted,' as well as 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response.'" (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986))).  To establish an Eighth Amendment violation, a plaintiff must also demonstrate the objective component of the analysis, that is, that "the defendant[] used a level of force that inflicted pain 'sufficiently serious' to offend 'contemporary standards of decency.'"  Bullocks v. Hale, 478 F. Supp. 3d 639, 646 (S.D. Ohio 2020) (quoting Cordell, 759 F.3d at 580).

Here, Gillen's testimony is that Defendant Ditto "struck [Gillen] on the right side of the face when [Gillen] was cuffed up.  There was no injuries on the back of [Gillen's] head.

There was no marks or bruises or swelling on the side of [Gillen's] face because, frankly, man, [Ditto] don't know how to hit hard." (Gillen Deposition Transcript ("Tr."), ECF No. 60 at PageID 320:10-14.) Gillen later reiterated that he "didn't get no injuries from Ditto" after he was handcuffed. (Id. at PageID 326:2-7.) Gillen's testimony that not only did he not get any injuries from Ditto's strikes, but also that the strikes did not hurt, strongly supports a conclusion that not only was any injury resulting from Ditto's use of force *de minimis*, but also that the force itself was *de minimis*. See Leary, 528 F.3d at 443 (noting that the plaintiff's testimony that the defendant's actions "didn't hurt or nothing" supported a conclusion that "the actual or threatened *force* was *de minimis*, not just [that] the injury was *de minimis*" and stating that "[w]hatever else non-actionable *de minimis* force may be, it must include a touching that neither 'hurt' nor threatened the individual.").

Because of Ditto's own testimony that the use of force did not cause any injury and did not hurt, and because the use of force at issue occurred "on the tail end of an altercation initiated by Gillen" (see ECF No. 65 at PageID 592), this Court finds that Ditto's use of force was *de minimis* and was not "repugnant to the conscience of mankind." Hudson, 503 U.S. at 9–10.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's objections to the Magistrate Judge's Report and Recommendations are **OVERRULED** and Defendants' Motion for Summary Judgment is **GRANTED**. Plaintiff's claims against the Defendants are **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 6th day of August, 2021.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE